**Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000932
30-SEP-2015
08:58 AM**

NO. CAAP-14-0000932

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
PARIS NEWBERRY, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(FC-CR. NO. 13-1-0028)

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Leonard and Ginoza, JJ.)

Defendant-Appellant Paris Newberry (**Newberry**) appeals from the Circuit Court of the First Circuit's (**Circuit Court's**)[1] Judgment of Conviction and Sentence entered on June 27, 2014 (**Judgment**). After a jury trial, Newberry was convicted of two counts, Abuse of Family or Household Members, in violation of Hawaii Revised Statutes (**HRS**) § 709-906(1) (2014), and Abuse of Family or Household Members HRS § 709-906(1) and (5) (2014).

Newberry raises four points of error on appeal, contending that: (1) the Circuit Court erred when it denied his motion for mistrial when the complaining witness (**CW**) testified twice that she was threatened by Newberry, in violation of the court's ruling on a motion *in limine*; (2) the Circuit Court plainly erred when it failed to *sua sponte* declare a mistrial when the court observed CW sobbing and crying as she left the

---

[1] The Honorable Judge Edward H. Kubo presided.

courtroom, which caused several jurors to turn their heads and look at her as she departed; (3) the Circuit Court erred when it denied Newberry's second motion for mistrial when CW testified that she saw Newberry holding a bolo knife when he first arrived at the house, purportedly in violation of the court's ruling on the motion *in limine*; and (4) the cumulative effect of CW's alleged misconduct amounted to prejudice too substantial for any cautionary instructions to overcome.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Newberry's points of error as follows:

(1)    Newberry argues that the Circuit Court erred in denying his motion for mistrial when CW testified that she had been threatened by Newberry, in violation of the court's ruling *in limine*.    Newberry argues that CW's testimony concerning prior threats substantially prejudiced his right to a fair trial, notwithstanding the Circuit Court's instructions to the jury.

In determining whether a witness's improper comments warrant a new trial, the reviewing court considers:    (1) "the nature of the misconduct;"  (2) "the promptness of a curative instruction;" and (3) "the strength or weakness of the evidence against the defendant."    State v. Samuel, 74 Haw. 141, 148-49, 838 P.2d 1374, 1378 (1992) (quoting State v. Senteno, 69 Haw. 363, 366, 742 P.2d 369, 372 (1987)).

In the present case, the Circuit Court granted Newberry's motion *in limine* to exclude testimonial or documentary evidence of Newberry's bad acts, pursuant to Hawaii Rules of Evidence (**HRE**) Rule 404.    The following testimony constitutes the alleged misconduct:

> [Defense counsel]: Did you allow Mr. Newberry to take Herbert to things that he had to go to, like let's say he had to go to get his hair cut?
>
> [CW]: I'm sorry, can I response to that?
>
> [Defense counsel]: Yeah, you can.
>
> [CW]: The reason for that was because -- am I allowed to?

[Court]: Yes.

[CW]: He was already threatening me prior to this July 14th incident. That's one of the reason why I cant -- there are times that I can't do my responsibility with Herbert. There's few times that, yes, I remember he did took Herbert to the hair cut because of the reason that I --

[Defense counsel]: Okay. Wait, wait. So you let him stay with Mr. Newberry even after breaking up from February '13, you let him stay with Mr. Newberry on July 14th and he's threatening you?

[CW]: I ask him to leave.

[Defense counsel]: No. Did Herbert ask him to leave?

[CW]: What I remember, that Herbert was asking the nephew -- no, I'm sorry, the niece to take care the situation, like to write a letter to Paris to move out the property.

[Defense counsel]: Okay. Well, I'll move on, because -- isn't it true that Mr. Newberry had to take Mr. Won on occasion to his things because you couldn't, correct?

[CW]: As I remember, sir, only those -- the hair cut time, that one particular time that I cant get there because Paris was threatening me.

The first factor requires consideration of the nature of the misconduct. The record reflects CW's hesitation when responding to defense counsel's questions. On two occasions in this exchange, CW asks whether she can respond to the question. It is only after CW receives confirmation from both defense counsel and the Court that she testified about the prior threats. Indeed, after her first mention of the prior threats, defense counsel specifically asked, ". . . you let him stay with Mr. Newberry on July 14th and he's threatening you?" It does not appear that CW's testimony was a blatant attempt to violate the Court's ruling on the motion *in limine*; on the contrary, CW was clearly concerned about whether she was permitted to respond. The second reference to Newberry's threat followed defense counsel's repeat of essentially the same question that elicited the first reference. We conclude that the witness's "misconduct" appeared to be inadvertent and was not egregious.

As to the second factor, a curative instruction was provided the following day, when the issue was raised (for the

3

first time) by the defense. In <u>Webster</u>, the Hawai'i Supreme Court held that the trial court's curative instructions, made at the end of the witness's testimony and after a recess, were sufficiently prompt. <u>State v. Webster</u>, 94 Hawai'i 241, 248-49, 11 P.3d 466, 474 (2000). Here, defense counsel did not immediately object to the testimony concerning prior threats. It was not until the following day that defense counsel orally moved for a mistrial. The Circuit Court denied the motion, but then instructed the jury that it was striking CW's testimony "that she could not take [Herbert] to other places because [D]efendant had in essence threatened her in the past." The Circuit Court informed the jury that such testimony was irrelevant and further instructed the jury to "absolutely disregard that part of the testimony in [its] consideration of th[e] cases as jurors" meaning that the jurors "must in no way consider that part of the testimony . . . and that [they] will completely disregard it in [their] deliberations of this case." In our view, the Circuit Court's curative instructions to the jury, which were delivered prior to the end of CW's testimony, were sufficiently prompt and very clear.

The third factor requires consideration of the strength or weakness of the evidence against Newberry. The State's case primarily depended on the testimony of CW and her young daughter, AA. CW testified that Newberry had choked her neck three times and had hit her in the abdomen with his knee. CW also testified about the contents of a letter that Newberry put in her car immediately after the incident. In the letter, which was in evidence, Defendant wrote that he was "about to snap" and "you are walking on dangerous ground." AA testified that Newberry "got mad" and choked CW by the neck with his two hands. AA testified that CW "was moving her lips. She was trying to say words, because I heard 'eeks,' coming out." AA testified that Newberry then "kicked [CW] three times in the stomach with his knee[.]" The State presented exhibits depicting a scratch to CW's neck and bruising to her arm and shoulder, as well as testimony from the examining physician who confirmed that the

injuries he observed on CW's neck were consistent with the mechanism she described concerning Newberry grabbing her neck, that he did not find any obvious signs of abdominal trauma, but that being kneed in the abdomen would not necessarily leave obvious signs. In addition, the evidence included a video recording from inside the house on the day of the incident, the audio portion of which adds to the strength of the evidence against Newberry. Based on our review of the record, there was ample evidence to support the jury's verdict that Newberry physically abused CW.

After considering the three Samuel factors, we conclude that the Circuit Court did not abuse its discretion in denying Newberry's motion for mistrial based on CW's testimony.

(2) Although no motion or objection was raised below, Newberry argues on appeal that the Circuit Court erred in failing to declare a mistrial *sua sponte* when it witnessed CW sobbing and crying as she was leaving the courtroom. The trial transcript includes the following:

> [Court]: The Court notes for the record that the Court instructed the prosecutor to go outside and isolate the complaining witness from the jury, because as the complaining witness was leaving the stand, she began to break down emotionally, pulled a tissue from the tissue box, and before exiting this courtroom, she began an emotional outburst in terms of sobbing and crying, which was clearly heard not only by this Court, but caused several jurors to turn their heads looking at her as she departed this courtroom. That's why the Court instructed the prosecutor to get her into a witness room hopefully and out of the jury's path before the jury could be sent out to lunch . . .
>
> [Defense counsel]: Well, Your Honor, I realize that there was an outburst, I was totally distracted with my own ongoings, and I appreciate the Judge's observations of what had transpired. I hope that it wasn't done by the complainant in a manner that was contrived.
>
> [Court]: I hope not, and I don't think it was. But it's not good to have instances like that done in front of the jury because it plays on emotions, and it could backfire. But its basically feeding the jury information not during a court proceeding, and I consider that to be improper.
>
> Under these circumstances, I'm going to deny any motions for a mistrial, but I want -- and again I find no fault in the prosecutor in this respect, she has no control over these witnesses who come into court charged emotionally because of the events which they perceive may have happened.

In State v. Lagat, 97 Hawaiʻi 492, 496, 40 P.3d 894, 898 (2002), Defendant argued that the sight of complainant's crying, throughout her testimony, so inflamed the jury that his right to a fair trial was compromised. The Hawaiʻi Supreme Court acknowledged that other jurisdictions have indicated that "outbursts of emotion by witnesses do not automatically prejudice a defendant's right to a fair trial." Id. at 497, 40 P.3d at 899. Ultimately, the Lagat court held that the Defendant was not entitled to a mistrial due to complaining witness's crying. Id.

As in Lagat, Newberry's bald assertion that he was denied the right to a fair trial based on CW's emotional outburst, "standing alone, is insufficient to establish a prima facie showing of prejudice." Id. at 497, 40 P.3d at 899. In Lagat, the Supreme Court refused to second guess the trial court concerning the prejudice, if any, that occurred as a result of CW's crying. Id. Although the Circuit Court did not provide any instruction to the jury, the Circuit Court did instruct the prosecutor to isolate the witness from the jury and discussed the potential for prejudice. The court noted that CW's emotional outburst did not appear to be contrived. In addition, CW's tearful episode occurred as she was leaving the courtroom, as opposed to during her testimony, making it unclear what engendered her reaction. There is no evidence in the record that CW repeated this behavior when she later resumed her testimony. Based on our review of the record, we conclude that the Circuit Court did not plainly err in failing to declare a mistrial sua sponte.

(3) Newberry argues that the CW's mention of a bolo knife violated the Circuit Court's ruling in limine regarding bad acts and deprived Newberry of his right to a fair trial. Newberry argues that, although the mere fact that Newberry was holding a knife does not constitute a prior bad act, the implication was that the CW felt threatened. The State notes that the CW did not testify that Newberry brandished the bolo knife in a threatening manner or that he threatened her in any way with it.

On cross-examination, CW testified "that when she arrived at Herbert's house, she saw [Defendant] holding a bolo knife[.]" The exchange took place as follows:

> [Defense counsel]: Okay. When you first got to the residence, where was Mr. Newberry?
>
> [CW]: He was in the garage, sir.
>
> [Defense counsel]: Where exactly in the garage?
>
> [CW]: I recall he was standing by the corner of that cement wall, against the wall going inside the house where the door is. And I recall as well --
>
> [Defense counsel]: He was -- wait, let me see if I got you correctly. He was standing next to the screen door that's leading into the house?
>
> [CW]: Not the screen door, sir.
>
> [Defense counsel]: Okay. Where?
>
> [CW]: In my recollection after looking back to that, he was standing against the wall.
>
> [Defense counsel]: Which wall do you mean?
>
> [CW]: By that corner of the wall. I recall he was holding a bolo knife that was --

Defense counsel objected and asked to approach the bench. Defense counsel then moved for a mistrial. In response, the State requested that the Circuit Court deny the motion and to instruct the jury to strike CW's testimony regarding the bolo knife. The Circuit Court declined to grant a mistrial, noting that:

> In this particular case, it's my take from the evidence presented thus far, the complaining witness has a cultural inability to articulate due to what I perceive as her cultural Filipino national background in trying to enunciate herself clearly to a question, whichever question that's being asked. That's my take, and when pressed, it seems to me as if she seems to feel that she needs to explain.
>
> Now, in this particular case it's also my take that the positions of the parties, where they were at when she entered the garage was asked and answered; that's an area that had been touched previously on cross examination. And I don't know if the witness believed that more explanation was necessary.
>
> Now, having said that, I turn to the fact that the defendant is entitled to a fair trial, and mistakes whether intentional, inadvertent or just based on communication or error, may still affect the defendant's due process rights before the Court. I

7

agree with the defense attorney that the cumulation of these mistakes is growing, but I do not yet believe that the aggregate number of mistakes have affected the rights to such an extent where a fair trial still cannot be had. Under these circumstances, the motion for mistrial is hereby denied.

The following day, prior to the resumption of testimony, the Court struck CW's testimony "as to what she might have seen in Mr. Newberry's hands as she entered the carport; namely, a bolo knife or something like that." The court said, "That's irrelevant," and instructed the jury to "absolutely disregard that part of the testimony."

We first consider the nature of the alleged misconduct. The question that sparked defense counsel's objection was "which wall do you mean?" The question itself was apparently intended to clarify Defendant's physical position when CW arrived at the house. Although the CW's mention of a bolo knife could have raised a question in the juror's minds, it did not necessarily create an inference that Newberry was threatening CW with the bolo knife. The CW's mention of the bolo knife seemed inadvertent and, without more, did not necessarily violate the Circuit Court's ruling on Newberry's motion *in limine*.

As to the second factor, the Circuit Court promptly provided a clear, curative instruction to the jury at the beginning of the next day, after the end of the CW's testimony.

Finally, as discussed, there was ample evidence to support the jury's verdict that Newberry physically abused CW. Accordingly, we conclude that the Circuit Court did not abuse its discretion in denying Newberry's motion for mistrial based on CW's brief testimony that Newberry was holding a bolo knife.

(4) Finally, Newberry argues that, although each error standing alone may not warrant a mistrial, the cumulative effect of CW's testimony and actions resulted in bias and prejudice against Newberry that deprived him of a fair trial. The Hawaiʻi Supreme Court has recognized that the cumulative weight of errors may create such an atmosphere of bias and prejudice so as to deprive the defendant of a fair trial. State v. Amorin, 58 Haw. 623, 631, 574 P.2d 895, 900 (1978). This court has also

articulated that a motion for mistrial may be granted when there is an "occurrence of such character and magnitude that a party is denied the right to a fair trial." Stewart v. Brennan, 7 Haw. App. 136, 149, 748 P.2d 816, 825 (1988) (citation omitted).

However, for the reasons stated above, and considering the record in its entirety, we conclude that CW's testimony and actions were not of "such character and magnitude," and the related potential harm to Newberry was not so substantial, that Newberry was denied his right to a fair trial.

Therefore, the Circuit Court's June 27, 2014 Judgment is affirmed.

DATED: Honolulu, Hawai'i, September 30, 2015.

On the briefs:

Michael J. Park
for Defendant-Appellant

Stephen K. Tsushima
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

Presiding Judge

Associate Judge

Associate Judge